**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUIGI LOCASTO, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 07 C 1539 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| MARY LOCASTO, f/k/a | ) | |
| MARY MOORE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Respondent's motion to enforce the June 12, 2007 settlement agreement.[1] Respondent Mary LoCasto ("Mary" or "Respondent") contends the parties reached an oral agreement during the settlement conference. Petitioner Luigi LoCasto ("Luigi" or "Petitioner") argues the parties did not reach an agreement because any agreement was conditioned upon the execution of a written agreement. Petitioner further argues there was not a meeting of the minds as to a material term because he did not agree to a release of his rights in this action. The Court holds that the parties reached an enforceable oral agreement on all material terms including all claims raised in this case.

---

[1] The settlement conference was held on June 12, 2007. The June 16 date found in the motion was corrected on its face to reflect the June 12 date.

The following constitute the Court's findings of fact and conclusions of law. To the extent certain findings of fact may be deemed conclusions of law, they shall also be considered conclusions of law. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings of fact.

## I. FINDINGS OF FACT

**A.**   **Background Facts**

Mary and Luigi are married, and they are the parents of Marina LoCasto, born on June 6, 1991, and Gianluca LoCasto, born on November 5, 1995[2] (the "Children"). Mary is a citizen of the United States and Luigi is a citizen of Italy. The Children were born in the United States and lived in Italy for a period of time. In August 2005, Mary and the Children returned to the United States from Italy.

On March 19, 2007, Luigi filed a petition for the return of his children pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"), 42 U.S.C. § 11603, The International Child Abduction Remedies Act, A.R.S. §25-1005, and the Uniform Child Custody Jurisdiction and Enforcement Act, 750 Ill. Comp. Stat. 36/302 (2004) ("Luigi's Petition"). Meanwhile, Mary started divorce proceedings in the Circuit Court of Cook County, Illinois, 07 D 5284 (the "Divorce Proceeding"). Pet. Resp. Ex. A.

---

[2]In Exhibit C of her motion to enforce Mary states that Gianluca LoCasto was born on May 11, 1995, but in her answer and affirmative defenses she states that he was born on November 5, 1995. Resp. Mot. Ex. C.; Resp. Answer, ¶ 7. The difference does not impact the Court's decision.

**B.     June 12, 2007 Settlement Conference**

On June 12, 2007 the parties participated in a settlement conference ("the Conference") before the Court.  Mary and her counsel were present.  Mitchell Katten represents Mary in this case, and Julie P. Brett represents Mary in the Divorce Proceeding. Luigi's counsel was present at the conference, and Luigi participated by telephone. Monica Tynan and Cheri Baden represent Luigi in this case, but do not represent Luigi in the Divorce Proceeding.

During the Conference the parties reached an oral agreement to settle the instant action (the "Agreement").  The material terms of the Agreement are as follows:
Luigi will be allowed six weeks of visitation each year with the Children.  The Children will spend three to four of the six weeks of visitation with Luigi in Italy "during the summer and/or around the children's Christmas and/or Easter vacations."  Resp. Mot. Ex. C, ¶ 2. Other than the prescribed visitation Mary will retain "physical possession" of the Children. *Id.* ¶ 1.  Mary will pay half of the children's round trip airfare to Italy one time per year so long as Luigi is providing child support.  If Luigi is not providing child support, he will pay the total cost for the Children's trip(s) to Italy from the United States.

Luigi shall notify Mary by February 1 of each year if he wants the Children to visit him in Italy or if he intends to travel to Chicago for the Children's spring visit.  Luigi shall notify Mary by April 1 of each year as to the weeks he would prefer the Children visit during the coming summer and whether the visit will be in Italy or Chicago.  Mary must respond by April 8.  The parties have until April 15 of each year to finalize the summer visitation

schedule. The children will decide when they want to visit Luigi over their Christmas break. Luigi has until October 1 of each year to communicate with the Children about this decision and to finalize their Christmas visitation schedule.

The parties intend the Children's trips to Italy will be no less than ten days, although the parties will consider the Children's schedules when deciding how long each trip will be. Mary is to obtain a new passport for Marina as soon as is practically possible and to keep Luigi apprised of the developments in securing the passport. The parties will work together on determining how the visit for this summer will take place in light of the passport issue and timing. Luigi will return the Children to the United States upon the completion of each of their visits to Italy. Mary agrees to allow Luigi full access to the Children when he comes to Chicago for the aforementioned weeks.

The Agreement is only a minimum visitation agreement and the parties are free to make any additional arrangements for visitation amongst themselves. The Agreement shall remain in effect for each of the Children until the respective child reaches the age of eighteen.

The parties also agreed that Luigi's Petition for return of the Children under the Hague Convention will be dismissed. The Divorce Proceeding was not included in the Agreement. The parties agreed to memorialize the Agreement in writing, but did not condition the Agreement on the

execution of a written agreement. Finally, the parties agreed that this Court would retain jurisdiction over the settlement.

**C.     Communications After the Settlement Conference**

On July 12, 2007, Luigi's counsel sent Mary a draft settlement agreement ("Luigi's Draft"). Resp. Mot. Ex. B. Luigi's Draft included all material terms agreed to in the Conference, including that the Agreement would release Luigi's claims under the Hague Convention. Id. ¶ 16. Luigi's counsel provided him with a copy of Luigi's Draft before they sent it to Mary, and Luigi did not object to its terms. On July 17, 2007, Mary's counsel sent Respondent a revised version of Luigi's Draft ("Mary's Draft"). Resp. Mot. Ex. C. While Mary's Draft made some slight changes to Luigi's Draft it did not alter any material terms.

On August 10, 2007, Luigi's counsel sent an email to Mary stating Luigi no longer wished to settle. On August 13, 2007, Mary filed her motion to enforce the June 12, 2007 settlement agreement.[3] Following briefing, the Court heard oral arguments on the motion on September 12, 2007. On that date the parties consented to the full jurisdiction of this Court. Also on that same date, the Court gave Luigi an opportunity to file a declaration in support of his response to the motion.

Luigi filed his declaration in support of his response to Respondent's motion on September, 19, 2007. In his declaration Luigi stated that during the Conference he did not understand that the Agreement would release his rights under the Hague Convention; he

---

[3]As noted above the motion was corrected on its face to reflect the June 12 date.

5

thought they were only agreeing on a visitation schedule. The declaration further stated it was only sometime after reading a draft of the Agreement that Luigi realized the Agreement would settle his rights under the Hague Convention, and he was not willing to agree to that.

## II. CONCLUSIONS OF LAW

**A.     Jurisdiction**

The courts of the States and the United States district courts have concurrent original jurisdiction of actions arising under the Hague Convention. 42 U.S.C. § 11603(a). Both parties have consented to this Court's jurisdiction over this matter pursuant to 28 U.S.C. § 636 (c)(1). Moreover, this Court has jurisdiction to enforce the Agreement because the Agreement's terms include the release of Respondent and the dismissal of the case without prejudice. *See Dupuy v. McEwen*, 495 F.3d 807, 810 (7th Cir. 2007).

**B.     Applicable Law**

State contract law governs the construction and enforcement of settlement agreements. *Dillard v. Starcon Int'l.,Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). In order for an agreement to be enforceable under Illinois law the material terms of the agreement must be "definite and certain so that a court can ascertain the parties' agreement." *Id.* at 507. An enforceable agreement also requires "a meeting of the minds" as to all material terms. *Id.* at 507-08. Finally, oral settlement agreements reached during a settlement conference before a judge are enforceable under Illinois law. *See Rose v. Mavrakis*, 799 N.E.2d 469, 478 (Ill. App. Ct. 2003).

**C.  The Agreement is Enforceable**.

The Court finds that the parties reached an agreement meeting the above requirements. The material terms of the agreement were "definite and certain," and there was a meeting of the minds between the parties as to all material terms. Moreover, although the parties made an oral agreement, this agreement was made before a judge and is thus still enforceable under Illinois law.

**1.  All Material Terms are Definite and Certain**.

The material terms of the Agreement are sufficiently definite and certain for the Agreement to be enforceable. Illinois law requires that for an agreement to be enforceable the material terms must be "definite and certain." *Dillard*, 483 F.3d at 507. In the Conference the parties agreed upon the frequency of visitations, their length, timing and location. The parties also agreed upon the procedure for establishing the visitation schedule each year and providing for the costs of the visitations. The parties also agreed that the Agreement would release the claims under Luigi's Petition. Additionally, the parties agreed on the length of the life of the Agreement. Finally, the parties agreed to memorialize the Agreement in a written document, but did not condition the Agreement upon execution of a written document.

These terms were then memorialized in both Luigi's Draft and Mary's Draft, and there were no material differences between Luigi's Draft and Mary's Draft. The minor differences

in the drafts do not prevent the Court from determining what the parties agreed to on June 12, 2007.[4] Therefore, the Agreement's material terms are sufficiently definite.

>    2.    **There was a Meeting of the Minds**.

The parties reached a meeting of the minds as to all material terms. An enforceable agreement requires "a meeting of the minds" as to all material terms. *Dillard*, 483 F.3d at 507-08. Whether there was a meeting of the minds is determined by the parties' objective conduct, not their subjective beliefs. *Id.*

Luigi contends there was no meeting of the minds regarding the release of his claims in this case. It was clear to the Court and to the parties and their counsel that this litigation was being settled. Both Luigi and his counsel discussed with Mary that the agreement would release Mary from Luigi's claims under the Hague Convention.

Luigi's objective actions after the Conference also suggest he understood the Agreement would settle the claims raised in his Petition. Almost a month after the Conference, on July 12, 2007, Luigi's counsel sent Luigi's Draft to Mary. Luigi's counsel showed this draft to Luigi before sending it to Mary. The preamble to Luigi's Draft stated that the Agreement settled and compromised "all claims set forth in this case and alleged in [Luigi's] Petition." Resp. Mot. Ex. B. And paragraph sixteen of Luigi's Draft stated "that

---

[4]Specifically the difference in the parties' drafts in paragraph 16 with respect to the legal form of dismissing Luigi's claims against Mary under the Hague Convention does not render the Agreement indefinite in its terms. *See Wilson v. Wilson,* 46 F.3d 660, 667 (7th Cir. 1995); *Dillard,* 483 F.3d at 508 ("the parties' actions do not suggest the points of dispute over the written agreement were material"); Resp. Mot. Ex. B; Resp. Mot. Ex. C.

in consideration of the terms set forth in this Agreement, Luigi LoCasto will dismiss his petition for return of the children under the Hague Convention." Resp. Mot. Ex. B. Luigi's Draft clearly defined the terms to which Luigi agreed. Yet despite being presented with this draft by his counsel, Luigi did not express that the draft did not match his understanding of what was discussed at the Conference. It was not until August 10 that Luigi first sought to back out of the agreement. This was almost two months after the Conference and nearly one month after Luigi was presented with a draft of the Agreement by his counsel.

It is irrelevant that Luigi's counsel informed Mary's counsel they had no authority to discuss the Divorce Proceeding. The Agreement did not settle any claims in the Divorce Proceeding. This was accurately memorialized in both Mary's Draft and Luigi's Draft. Both drafts state the Agreement covers the claims contained in Luigi's Petition, and neither draft refers to the Divorce Proceeding.

In light of Luigi's conduct during the Conference, and the fact that his counsel prepared the first draft of the Agreement, the Court finds that Luigi's objective conduct demonstrated an understanding on his part that the Agreement would settle his claims under the Hague Convention. The Court looks to the objective outward expressions of Luigi and Mary to determine if an agreement was reached. The two drafts make it clear that an oral agreement was reached on all material terms of the contract.

### 3. The Oral Nature of the Agreement Does Not Render it Unenforceable.

The oral Agreement is enforceable. Oral settlement agreements are enforceable under Illinois law, *Dillard*, 483 F.3d at 506, unless prohibited by the Statute of Frauds. *Lynch*, *Inc. v. Samatamason*, 279 F.3d 487, 490 (7th Cir. 2002). When parties reach an agreement before a judge during a court-mandated settlement conference, that agreement is exempt from the Statute of Frauds. *See Rose*, 799 N.E.2d at 478. The Seventh Circuit has stated that under such circumstances, the Court should state the terms of the agreement on the record and have the parties acknowledge on the record that they agree to those terms. *Lynch*, 279 F.3d at 490. However, the fact that a judge did not insist the agreement be recorded will not invalidate the agreement if neither party asks that any part of the discussion be recorded. *Id.* at 491. Furthermore, the fact that parties anticipate a more formal future written agreement will generally not nullify an otherwise binding agreement. *See Abbott Labs v. Alpha Therapeutic Corp.*, 164 F.3d 385, 388 (7th Cir. 1999). However, where the parties intend a written agreement as a condition precedent to an agreement, an oral agreement will not be binding. *See Id.* at 388-89.

In this case, the parties reached the agreement in the Court's presence and it is therefore exempt from the Statute of Frauds. Furthermore, despite Luigi's belated assertion to the contrary, the parties did not condition their oral agreement on the execution of a written document. Instead, they merely agreed to memorialize the agreement in writing. Therefore, the oral agreement reached during the Conference is enforceable. *See Dillard,* 483 F.3d at 509.

### III. CONCLUSION

The material terms of the Agreement were sufficiently definite and certain for the Court to determine the parties' agreement. The parties' objective outward expressions at the Conference demonstrated that there had been a meeting of the minds on all material terms. The Agreement is not barred by the Statute of Frauds because it was made before the Court in a court supervised settlement conference. **For the reasons set forth in this opinion, the Court grants Respondent's motion to enforce the settlement agreement. The parties are given to and including October 18, 2007 to sign the Settlement Agreement and to deliver an executed form of Agreed Order of Dismissal. In the event this does not occur, the Court hereby declares the Settlement Agreement prepared by Respondent's counsel (Exhibit C to the Motion to Enforce) is binding on the parties and the Court will enter the Agreed Order of Dismissal agreed to by the parties at the settlement conference.**

**SO ORDERED THIS 5th DAY OF October, 2007.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Monica Maria Tynan
Quarles & Brady LLP
500 West Madison Street
Suite 3700
Chicago, IL 60611-2511

Mitchell Bruce Katten
Joshua Richard Diller
O'Rourke, Katten & Moody
161 North Clark Street
Suite 2230
Chicago, IL 60601

**Counsel for Respondent**

Cheri Lynn Baden
Clausen Miller P.C.
10 South LaSalle Street
Suite 1600
Chicago, IL 60603

**Counsel for Petitioner**